# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 14-563V
Filed: February 26, 2016

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| WILLIAM JAKE BROOKS and MONICA LYNN BROOKS, as the legal representatives of their minor son, C.B., | |
| Petitioners, | Ruling on Pain & Suffering; Concession; Rotavirus Vaccine; Intussusception; Special Processing Unit ("SPU") |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Curtis R. Webb*, Twin Falls, ID, for petitioners.
*Alexis B. Babcock*, U.S. Department of Justice, Washington, DC, for respondent.

## RULING ON PAIN AND SUFFERING[1]

**Dorsey**, Chief Special Master:

On July 2, 2014, William Jake Brooks and Monica Lynn Brooks ("petitioners") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*,[2] (the "Vaccine Act" or "Program") on behalf of their minor son, C.B. The petition alleges that as a result of a rotavirus vaccination on July 8, 2011, C.B. suffered an intussusception, bowel resection, and sequela. Petition at 1-3.

---

[1] Because this unpublished ruling contains a reasoned explanation for the action in this case, the undersigned intends to post it on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012)(Federal Management and Promotion of Electronic Government Services). In accordance with Vaccine Rule 18(b), petitioners have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

It has already been determined that petitioners are entitled to compensation for C.B.'s vaccine related injury, and the only issue currently before the undersigned is the amount of damages that petitioners should be awarded in compensation for C.B.'s past and future pain, suffering, and emotional distress.[3]  As detailed below, the undersigned finds that an award of $144,000.00 represents a fair and appropriate amount of compensation for C.B.'s past pain and suffering.  The undersigned further finds that an award of $1000.00 per year over a seventy year life expectancy ($70,000.00) is a fair and appropriate amount of compensation for C.B.'s future pain and suffering.

## I.   Procedural History

On November 3, 2014, respondent filed her Rule 4(c) Report ("Resp't's Report"), in which she conceded that petitioners are entitled to compensation.  Resp't's Report, filed Nov. 3, 2014 at 5 (ECF No. 14).  Specifically, respondent submits that "the facts of this case [] support a finding that C.B.'s intussusception, more likely than not, was caused in fact by the administration of the rotavirus vaccine." Id.  Respondent notes that "C.B. suffered the effects or sequela of his injury for more than six months after vaccine administration." Id.  On November 4, 2014, a ruling on entitlement was issued by former Chief Special Master Vowell, finding petitioners entitled to compensation for C.B.'s intussusception.  Ruling on Entitlement, filed Nov. 4, 2014 (ECF No. 15).  That same date, a damages Order issued and the parties began the process of resolving the appropriate amount of damages to be awarded in this claim. Order, filed Nov. 4, 2014 (ECF No 16).

The parties continued to negotiate regarding the appropriate amount of damages until July 31, 2015, at which time the parties submitted a joint status report indicating that they were at an impasse regarding the appropriate amount of compensation for C.B.'s pain, suffering, and emotional distress and requested the assistance of Chief Special Master Vowell or another special master on this issue.  See Joint Status Report, filed July 31, 2015 (ECF No. 26).  A status conference was held on August 7, 2015, to discuss how to resolve the issue of C.B.'s pain, suffering and emotional distress.  See Order, filed August 11, 2015 (ECF No. 27).  The parties jointly chose to receive a ruling from the court on the issue of C.B.'s pain, suffering and emotional distress after an opportunity to brief the issue and submit any evidence.  Id.  Former Chief Special Master Vowell ordered the parties to file simultaneous briefs regarding pain and suffering.  Id.  The case was reassigned to the undersigned on August 11, 2015.  See Order, filed August 11, 2015 (ECF No. 28).

On October 13 and 14, 2015, the parties filed their respective briefs regarding pain, suffering, and emotional distress.  Respondent's Brief Regarding Pain and Suffering ("Resp't's Brief"), filed Oct. 13, 2015 (ECF No. 30); Petitioners' Memorandum Concerning Compensation for Pain, Suffering, and Emotional Distress ("Pet'r's Memo"), filed Oct. 14, 2014 (ECF No. 31).  On October 29, 2015, petitioner re-filed exhibit 13 (an

---

[3] Any references to C.B's pain and suffering, includes his emotional distress even if not explicitly indicated.

2

email from Simon Horlsen, MD) and exhibit 14 (an email from petitioner Monica Brooks). Exhibit 13 (ECF 34); exhibit 14 (ECF 34).

On December 3, 2015, the undersigned ordered petitioners to file "all gastrointestinal (GI) records, primary care provider (PCP) records, and any other records related to C.B.'s GI function or diarrhea problems dated between December 29, 2014 and the present date." See Order, filed Dec. 3, 2015 (ECF No. 36). On January 4, 2016, petitioners filed C.B.'s updated medical records, and a status report describing these records. Exhibit 15, filed Jan. 4, 2016 (ECF No. 39); Status Report filed Jan. 4, 2016 (ECF No. 40).

On January 21, 2016, petitioners filed a status report indicating that the parties had reached an agreement pertaining to an award for petitioners' past unreimbursed expenses. Status Report, filed Jan. 21, 2016 (ECF No. 43). The status report indicated that respondent did not object to an award of $9,500.00 for past unreimbursed expenses, and petitioners agreed that an award of $9,500.00 for their past unreimbursed expenses would be reasonable. Id. Thus it appears the only outstanding issue is a determination regarding C.B.'s pain and suffering.

The case is now ripe for a determination regarding C.B.'s pain and suffering. See Resp't's Brief at 4.

## II. Fact History

C.B. was born on March 7, 2011. Exhibit 4 at 2. On May 10, 2011, he received his two month vaccinations, including his first rotavirus vaccine. Exhibit 5 at 21. On July 8, 2011, C.B. received his four month vaccinations, including his second rotavirus vaccination. Exhibit 1 at 3; exhibit 5 at 27.

On July 23, 2011, C.B. was taken to the emergency department after vomiting subsequent to each feeding. Exhibit 6(1) at 3, 6. C.B. was admitted to the pediatrics department on July 24, 2011. C.B. continued to vomit and experience dry heaves, he experienced blood around his anus, and his overall condition did not improve despite numerous tests and consultation with pediatric surgery. Exhibit 6(1) at 26, 30, 34, 38, 40-42, 47, 49, 54-55, 57-60, 69, 72, 74, 81-82. A radiograph performed on C.B.'s abdomen on July 26, 2011 was interpreted to be "most compatible with ileocolic intussusception." Exhibit 6(1) at 91.

An exploratory laparotomy and small bowel resection were performed on C.B. by Dr. Lesperance on July 27, 2011, revealing a postoperative diagnosis of a "[s]mall bowel obstruction due to ileocecal intussusception." Exhibit 6(1) at 91. The operative note indicated that "[a]pproximately 45 [centimeter] segment of [C.B.'s] distal ileum [] was intussuscepted into the cecum with an apparent lead point located in the distal ileum." Exhibit 6(1) at 94. During the surgery to treat C.B.'s intussusception, frankly necrotic bowel was found, and approximately 40 centimeters of bowel was resected. Id. at 94-95. C.B. was in surgery for over three hours. Exhibit 6(2) at 32. C.B. remained in

the Pediatric Intensive Care Unit until August 3, 2011 (Exhibit 6(3) at 219) and was released from Madigan Army Medical Center on August 3, 2011 (Id. at 263).

Subsequent to his surgery, C.B. suffered from severe diarrhea and resultant rashes. See generally Exhibit 5; exhibit 11 at 6-7 (affidavit of Monica Brooks). "Initially after surgery [C.B] had 8-10 episodes of loose diarrhea." Exhibit 5 at 51. By October 4, 2011, C.B. was reported to be only having "2-4 bowel movement[s]" a day, one of which was "formed" and the remainder "looser." Id.[4]

C.B. was seen by gastroenterologist Dr. Simon Horslen on December 29, 2014. Exhibit 12 at 2.[5] Dr. Horlsen noted that C.B.'s "stool is not very far outside of the range of normal for his age. . ." Id. at 5. Dr. Horlsen indicated that C.B. should continue to avoid fruit if it was a problem for him, and with time, he would figure out which foods caused problems and avoid these foods. Id. Although, Dr. Horlson "suspect[s] that in the fullness of time, he will be able to take a complete diet without problems." Id. However, Dr. Horlsen further indicated that C.B.'s "stool frequency will get worse at times of intercurrent illnesses with courses of oral antibiotics or if he takes a lot of juice or fruit. . ." Id. He suspects that long-term C.B. "will have very little problems left over from his bowel resection." Id. at 4.

On January 12, 2015, C.B. was seen at the emergency department for a fever, nasal congestion, and decreased appetite. Exhibit. 15 at 44. It was noted that C.B. had no diarrhea and was prescribed liquid amoxicillin. Id. at 45-46. Thereafter, on January 16, 2015, C.B. was seen in follow-up at his pediatric clinic, where it was documented he was suffering from "loose stools/diarrhea." Id. at 41.

On October 13, 2015, C.B.'s mother, Monica Brooks ("Ms. Brooks") described C.B's current "progress or lack thereof" in an email to petitioners' counsel. Exhibit 14 at 2. Ms. Brooks indicated that was necessary for C.B. to wear pull-ups to school three or four days a week, depending on his food consumption, as he remained unable to process certain types of food. Id. Ms. Brooks noted that C.B.'s loose stools irritate his skin and cause him to suffer blisters, which sometimes open and become bloody. Id. Additionally, Ms. Brooks noted that C.B. is to begin kindergarten in July 2016, and if he is not able to control his bowel movements he will be required to enroll in a special education program. Id.

A January 16, 2016 email from Dr. Horlsen indicates that he "think[s] it is most likely (much more probable than not) that Cameron will be fully continent, toilet trained and not encounter additional issues in regard to his bowel function by the time he is ready to start kindergarten." Exhibit 13. However, the undersigned notes that Dr. Horlsen has not seen or examined C.B. since December 2014.

---

[4] Prior to his surgery, C.B had "a bowel movement once every 2 days." Exhibit 5, p. 51.

[5] The undersigned notes that the pagination designated by CM/ECF is utilized when referencing specific pages within this exhibit.

4

### III.   Contentions of the Parties

Respondent stresses that based on the record of this case, it appears that C.B. has fully recovered.  Resp't's Brief at 7.  Respondent notes that C.B. initially had "episodes of diarrhea," but that he had no "significant issues" with diarrhea after March 28, 2012."  Id.  Respondent suggests an award of $55,000.00 for C.B.'s past and future pain and suffering.  Id. at 9.

Petitioners request an award of $144,000.00 for C.B's past pain, suffering, and emotional distress.  Pet'r's Memo at 8-9.  Petitioners further request an award of $140,000.00 in future pain, suffering, and emotional distress, representing a breakdown of $2000.00 per year over a proposed seventy year life expectancy.  Id. at 9.  Petitioners note that their total award exceeds the statutory cap of $250,000.00 and thus reduce their request for future damages for pain and suffering to $106,000.00.  Id.  Finally, reduced to net present value, petitioners request $56,775.00 for future pain and suffering, for a total award of $200,775.00.  Id.

### IV.   Discussion

After a review of the entire record as well as the parties' briefing, the undersigned finds that $144,000.00 represents a fair and appropriate amount of compensation for C.B.'s past pain and suffering.  The undersigned further finds that an award of $1000.00 a year over a seventy year life expectancy, or $70,000.00 reduced to present value, is fair and appropriate amount of compensation for C.B.'s future pain and suffering.[6]  This amount accounts for the fact that C.B.'s intussusception was particularly severe.  C.B. spent considerable time in the hospital during which time he must have been extremely uncomfortable, had a significant amount of his bowel removed, and suffered ongoing diarrhea and rashes thereafter.  Additionally, the most recent medical records and email from Ms. Brooks, show that C.B. continues to suffer from loose bowel movements, particularly in conjunction with intercurrent illness and treatment with antibiotics or as a result of consuming certain foods. The undersigned notes that Dr. Horlsen's prediction was accurate regarding C.B.'s stool frequency becoming worse at times of intercurrent illnesses when prescribed oral antibiotics. The undersigned finds, as noted by Dr. Horlsen, that this issue will likely continue to impact C.B. throughout his life.

The undersigned notes that this pain and suffering award is higher than most prior awards within the Vaccine Program for the injury of intussusception.  However, the injury experienced by C.B. was atypically severe.  As such, this case is an outlier and should not be viewed as a reasonable award for pain and suffering for an average or typical intussusception claim in the Program.  Typical compensation for pain and suffering in intussusception injury claims in the Vaccine Program ranges from

---

[6]The undersigned notes that respondent did not challenge whether this was a reasonable life expectancy and agrees with petitioners that it is reasonable. Pet'r's Memo at 9.

$35,000.00 to approximately $70,000.00.  See Bodden v. Sec'y of Health & Human Servs., No. 14-25V, 2014 WL 1995605 (Fed. Cl. Spec. Mstr. Apr. 25, 2014) ($40,000.00 awarded for actual pain and suffering); P.H. v. Sec'y of Health & Human Servs., No. 14-1112V, 2015 WL 4055053, at *1 (Fed. Cl. Spec. Mstr. June 11, 2015) ($36,000.00 awarded for actual and projected pain and suffering); E.J.N. v. Sec'y of Health & Human Servs., No. 13-1029V, 2014 WL 1614526, at *2 (Fed. Cl. Spec. Mstr. Apr. 1, 2014) ($35,000.00 for actual and projected pain and suffering); Reed v. Sec'y of Health & Human Servs., No. 14-653V, 2015 WL 779137, at *1 (Fed. Cl. Spec. Mstr. Jan. 9, 2015) ($35,000.00 awarded for actual and projected pain and suffering); Perales v. Sec'y of Health & Human Servs., No. 15-474V, 2015 WL 7253654, at *2 (Fed. Cl. Spec. Mstr. Oct. 13, 2015) ($69,416.70 award for actual pain and suffering, although the award is in the form of an annuity "beginning March 12, 2032, $6,941.67 payable annually for ten (10) years certain only").[7]

The undersigned also notes the following two Vaccine Program cases involving intussusception which provide no breakdown of damages awarded.  Werner v. Sec'y of Health & Human Servs., No. 14-1065V, 2015 WL 5166376 (Fed. Cl. Spec. Mstr.  Aug. 12, 2015)(damages award resolves an intussusception case through a series of four annuity payouts at $14,526.50 for a total of $58,106.00 to be awarded between 2031-34, in addition to payment of a Medicaid lien); Comeaux v. Sec'y of Health & Human Servs., No. 12-348V, 2013 U.S. Claims Lexis 2096 (Fed. Cl.  Spec. Mstr. Dec.19, 2013)($150,000.00 awarded to petitioners for minor child's alleged intussusception pursuant to the parties' joint stipulation).[8]

### V.    Conclusion

For all of the reasons described above, and based on consideration of the record as a whole, the undersigned finds that $144,000.00 represents a fair and appropriate amount of compensation for C.B.'s past pain and suffering.  The undersigned further finds that an award of $1000.00 per year over a seventy year life expectancy ($70,000.00) is a fair and appropriate amount of compensation for C.B.'s future pain and suffering.  In addition, the undersigned finds based on the petitioners' status report filed January 21, 2016, that petitioners are also entitled to compensation in the amount of $9,500.00 in past unreimbursable expenses.

**Therefore, the undersigned directs the parties to file a joint status report by no later than March 14, 2016, converting the undersigned's award of future pain**

---

[7] Petitioners have also pointed to one civil case where a plaintiff was awarded $125,000.00 as part of package that included $69.299.94 for an annuity appearing to compensate the minor child for pain and suffering related to an intussusception.  Allen v. Robert's American Gourmet Food, Inc., 2009 U.S. Dist. Lexis 82175 (E.D. of New York).

[8] The undersigned is also mindful of the fact that all of these prior awards were based upon agreements reached by the parties rather than being the result of reasoned decisions in contested cases.

**and suffering to the net present value and indicating whether any other damages items remain outstanding, or if this claim is ripe for a decision on damages.**

**IT IS SO ORDERED.**

**s/ Nora Beth Dorsey**
Nora Beth Dorsey
Chief Special Master
